UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TRAVIS BOWLES,

                    Petitioner,

          v.

ISIDRO BACA, *et al.*,

                    Respondents.

Case No. 3:18-cv-00272-MMD-WGC

ORDER

I.    **SUMMARY**

Petitioner Travis Bowles filed a petition for writ of *habeas corpus* under 28 U.S.C. § 2254 (ECF No. 4 ("Petition")). This habeas matter comes before the Court for a final decision on the merits of the remaining grounds in the Petition. The Court denies the Petition and denies Petitioner a certificate of appealability.

II.    **BACKGROUND**

Petitioner challenges his 2012 Nevada state judgment of conviction, pursuant to a jury verdict, of six counts of lewdness with a child under the age of fourteen years. (ECF No. 15-23.) Petitioner was charged with committing lewd acts upon his two stepdaughters, S.T. and M.T., who were ten and eight years old respectively at the time that the acts were committed. (ECF Nos. 14-7, 14-8.) Prior to his arrest, detectives from the Sparks Police Department interviewed Petitioner.[1] (ECF No. 29 at 208.) Petitioner drove himself to the police station for the interview. (*Id.* at 207-08.) The detectives informed Petitioner that he was not under arrest and that the interview was voluntary. (ECF Nos. 29 at 208, 14-7 at 16.) The interview room was unlocked during the interview and a detective who conducted the interview testified that Petitioner was free to leave at

---

[1]Petitioner's interview was videotaped and played at trial. The videotape, however, was not transcribed into the record.

1    any time. (ECF No. 29 at 209.) At the conclusion of the interview, Petitioner left the police

2    station. (*Id.*)

3          Both S.T. and M.T. testified at the preliminary hearing and at trial. (ECF Nos. 14-

4    7, 15-15.) S.T. testified that Petitioner talked to her about "the penis, the vagina, and men

5    and women" to prepare her for "the world." (ECF No. 15-15 at 45.) S.T. further testified

6    that Petitioner showed his penis and his testicles to her while they were in the garage.

7    (*Id.* at 46-47.) At both the preliminary hearing and at trial, S.T. testified that she had

8    touched Petitioner's penis and testicles while they were in the garage and also in the

9    bathroom. (ECF Nos. 14-7 at 35-36, 15-15 at 52-54.) On one occasion while taking a nap

10   in bed together, Petitioner's penis touched S.T.'s buttocks and Petitioner told her that his

11   penis "was waking up" and "saying hello." (ECF No. 15-15 at 60.) On that occasion, after

12   Petitioner asked S.T. if she wanted to say hello back, S.T. held Petitioner's penis. (*Id.* at

13   60-61.) S.T. testified that she had kissed Petitioner's penis in the garage. (ECF Nos. 14-

14   7 at 44, 15-15 at 53.)

15         M.T. similarly testified that Petitioner taught her about "the real world." (ECF Nos.

16   14-7 at 52, 15-15 at 117.) M.T. testified that she had touched Petitioner's penis and

17   testicles. (ECF No. 15-15 at 128.) M.T. testified that Petitioner asked M.T. if she wanted

18   to try a vibrator and placed a vibrator on her vagina over her clothing while they were in

19   the bathroom. (ECF Nos. 14-7 at 55-57, 15-15 at 126-27.) Petitioner had watched S.T.

20   and M.T. masturbate and M.T. testified that Petitioner put lubricant on M.T.'s finger. (ECF

21   Nos. 14-7 at 53-54, 15-15 at 130.)

22         Petitioner was found guilty of six counts of lewdness with a child under the age of

23   fourteen years. (ECF No. 15-23.) The state district court sentenced Petitioner to three

24   consecutive ten years to life sentences and three concurrent ten years to life sentences.

25   (ECF Nos. 15-22 at 21-22, 15-23.) Petitioner appealed and the Nevada Supreme Court

26   affirmed the judgment of conviction. (ECF No. 16-12.) Petitioner then filed a state habeas

27   petition and the State filed a motion to dismiss. Following oral argument, the state district

28   court dismissed Petitioner's habeas petition. (ECF No. 18-5.) The Nevada Supreme Court

1  affirmed the dismissal of the petition. (ECF No. 18-28.) Petitioner dispatched his federal

2  habeas petition. (ECF No. 4.) Respondents moved to dismiss the petition and Petitioner

3  elected to dismiss his unexhausted claims. (ECF Nos. 13, 25.) As such, the Court

4  dismissed Grounds 4, in part, 7(2), 7(3), 7(4), 7(5), 8, and 9. (ECF No. 28.)

5  **III.   LEGAL STANDARD**

6          28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in

7  *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

8          An application for a writ of habeas corpus on behalf of a person in custody
           pursuant to the judgment of a State court shall not be granted with respect
9          to any claim that was adjudicated on the merits in State court proceedings
           unless the adjudication of the claim –
10

11         (1) resulted in a decision that was contrary to, or involved an unreasonable
           application of, clearly established Federal law, as determined by the
12         Supreme Court of the United States; or

13         (2) resulted in a decision that was based on an unreasonable determination
           of the facts in light of the evidence presented in the State court proceeding.
14

15  28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court

16  precedent, within the meaning of § 2254(d), "if the state court applies a rule that

17  contradicts the governing law set forth in [Supreme Court] cases" or "if the state court

18  confronts a set of facts that are materially indistinguishable from a decision of [the

19  Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v.

20  Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694

21  (2002)). A state court decision is an unreasonable application of established Supreme

22  Court precedent under § 2254(d), "if the state court identifies the correct governing legal

23  principle from [the Supreme] Court's decisions but unreasonably applies that principle to

24  the facts of the prisoner's case." *Id.* at 75. "The 'unreasonable application' clause requires

25  the state court decision to be more than incorrect or erroneous. The state court's

26  application of clearly established law must be objectively unreasonable." *Id.*

27          The Supreme Court has instructed that "[a] state court's determination that a claim

28  lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

3

1   on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

2   (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case

3   for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at

4   102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181

5   (2011) (internal quotation marks and citations omitted) (describing the standard as

6   "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which

7   demands that state-court decisions be given the benefit of the doubt").

8   **IV.   DISCUSSION**

9       **A.   Ground 1**

10       In Ground 1, Petitioner alleges that his federal constitutional rights were violated

11   when the State failed to disclose exculpatory evidence contained in a social services

12   report wherein M.T. denied that she was a victim. (ECF No. 4 at 3.) Petitioner's claim is

13   based on violations of *Brady v. Maryland*. 373 U.S. 83 (1963). On direct appeal, the

14   Nevada Supreme Court held:

15         Bowles contends that the district court erred by denying his discovery
request for existing reports on the victims and the State committed
16   misconduct by failing to provide them. "We review district court's resolution
of discovery disputes for an abuse of discretion." *Means v. State*, 120 Nev.
17   1001, 1007, 103 P.3d 25, 29 (2004). The record reveals that the State filed
a supplemental notice of expert witnesses and indicated that these
18   witnesses may be called during rebuttal. Bowles requested the experts'
written reports, stated that he was entitled to the reports by statute, asserted
19   that the reports contained exculpatory information, and admitted that he had
a copy of the report containing exculpatory information. The district court
20   ruled that the State did not have to produce documents that Bowles already
possessed and Bowles could renew his motion if the State called the
21   experts as rebuttal witnesses. We conclude from this record that Bowles
has failed to demonstrate that the district court abused its discretion in
22   resolving this discovery dispute or that the State committed misconduct by
failing to provide the expert witnesses' reports.

23

24   (ECF No. 16-12 at 4-5.) The Nevada Supreme Court's determination that Petitioner failed

25   to demonstrate misconduct was neither contrary to nor an unreasonable application of

26   clearly established law as determined by the United States Supreme Court.

27       "[T]he suppression by the prosecutor of evidence favorable to an accused upon

28   request violates due process where the evidence is material either to guilt or to

1  punishment irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S.

2  at 87. Because a witness's "'reliability . . . may well be determinative of guilt or innocence,'

3  nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." *Giglio v. United*

4  *States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).

5  "There are three components of a true *Brady* violation: The evidence at issue must be

6  favorable to the accused, either because it is exculpatory, or because it is impeaching;

7  that evidence must have been suppressed by the State, either willfully or inadvertently;

8  and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The

9  materiality of the evidence that has been suppressed is assessed to determine whether

10  prejudice exists. *See Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006). Evidence is

11  material "if there is a reasonable probability that, had the evidence been disclosed to the

12  defense, the result of the proceeding would have been different." *United States v. Bagley*,

13  473 U.S. 667, 682 (1985). "A 'reasonable probability' of a different result [exists] when the

14  government's evidentiary suppression 'undermines confidence in the outcome of the

15  trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

16      At the hearing on Petitioner's motions for discovery and for psychological

17  evaluations, Petitioner represented that in a report, "the alleged victim [M.T.] denies that

18  she was a victim," and characterized such as being "clearly exculpatory." (ECF No. 15-7

19  at 6.) As noted by the Nevada Supreme Court, Petitioner admitted that he had a copy of

20  the document containing the alleged exculpatory information and the district court ruled

21  that the State did not have to produce documents that Petitioner already possessed. (*Id.*

22  at 6-7.) The Nevada Supreme Court reasonably denied Petitioner's *Brady* claim because

23  the alleged undisclosed exculpatory evidence was not suppressed by the State.

24  Therefore, Petitioner is denied federal habeas relief on Ground 1.

25      The Court would reach the same result on *de novo* review for the following

26  reasons. To the extent that Petitioner would have used the alleged undisclosed reports

27  to demonstrate that M.T. denied that she was a victim, such evidence was before the jury.

28  Petitioner elicited testimony from M.T. on cross-examination that M.T. did not tell a

detective about the vibrator or that she touched Petitioner's testicles (ECF No. 15-15 at 148-49.) Petitioner elicited testimony from a licensed social worker who performed a sexual assessment on M.T. that M.T. denied that she experienced sexual abuse. (ECF No. 15-16 at 25.) Petitioner elicited testimony from a police officer that after he interviewed M.T., she was initially characterized as a witness, rather than a victim. (ECF No. 29 at 213.) Further, Petitioner elicited testimony from a detective that M.T. denied that anything of a sexual nature happened between her and Petitioner. (ECF No. 15-16 at 59.) Therefore, Petitioner failed to demonstrate that the alleged undisclosed reports were material because there was not "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473. U.S. at 682. As such, in the alternative, the Court on *de novo* review would reach the same result denying habeas relief on Ground 1.

## B.   Conclusory Claims

Pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases, a federal habeas petition must specify all grounds for relief and "state the facts supporting each ground." Rule 2(c) requires specific pleading of facts that, if proven to be true, would entitle the petitioner to federal habeas relief. Claims based on conclusory allegations are not a sufficient basis for federal habeas relief. *See Mayle v. Felix*, 545 U.S. 644, 655–56 (2005) (acknowledging that notice pleading is insufficient to satisfy the specific pleading requirement for federal habeas petitions).

Prisoner *pro se* pleadings are understandably given the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Summary dismissal, however, is appropriate when the allegations in a petition are "vague, conclusory, palpably incredible, patently frivolous or false." *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("[C]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977). It is permissible for *pro se* petitioners to incorporate claims by reference when the petition includes specific

1   references to a document that is attached to the federal petition. *Dye v. Hofbauer*, 546

2   U.S. 1 (2005) (per curium) (applying Fed. R. Civ. P. 10(c) in habeas proceeding).

3   However, there is no authority permitting a federal habeas petitioner to incorporate

4   claims from documents not attached to the petition.

5                          **i.     Ground 2**

6          In Ground 2, Petitioner alleges, without elaboration, that the state district court

7   unreasonably limited his cross-examination of witnesses in violation of his right to

8   confrontation. (ECF No. 4 at 5.) Petitioner incorporated by reference certain claims made

9   on direct appeal in state court. (*Id.*) Respondents argue that Petitioner failed to support

10  his claim with any specific facts or evidentiary support, other than references to the claims

11  made on direct appeal. (ECF No. 30 at 7-8.) Because Petitioner did not attach the opening

12  or reply brief on direct appeal in state court to his federal petition, Petitioner failed to

13  present the Court with facts that, if proven true, would establish that Petitioner is entitled

14  to relief on those grounds. Further, Petitioner failed to offer factual allegations to

15  demonstrate how the state court unreasonably limited his cross-examination of

16  witnesses. Petitioner's conclusory allegations are insufficient to warrant habeas relief.

17  Accordingly, Petitioner is not entitled to habeas relief on Ground 2.

18                         **ii.    Ground 3**

19         In Ground 3, Petitioner alleges that the state district court lacked subject matter

20  and personal jurisdiction. (ECF No. 4 at 7.) Respondents argue that Petitioner's claim is

21  conclusory and that the Nevada Court of Appeals nonetheless declined to consider this

22  claim. (ECF No. 30 at 8, fn. 6.) Although Petitioner references the claim made in the

23  amended habeas petition that was filed in state court, he fails to attach such amended

24  petition to his federal petition. Further, while Petitioner provides procedural history of the

25  claim, he fails to present factual allegations to demonstrate that the state district court

26  lacked subject matter or personal jurisdiction. Petitioner's conclusory allegations are

27  insufficient to warrant habeas relief. Accordingly, Petitioner is not entitled to habeas relief

28  on Ground 3.

1  **C.  Standard for Evaluating an Ineffective-Assistance-of-Counsel Claim**

2  In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for

3  analysis of ineffective-assistance-of-counsel claims requiring Petitioner to demonstrate

4  that: (1) the counsel's "representation fell below an objective standard of

5  reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such

6  that "there is a reasonable probability that, but for counsel's unprofessional errors, the

7  result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).

8  Courts considering an ineffective-assistance-of-counsel claim must apply a "strong

9  presumption that counsel's conduct falls within the wide range of reasonable professional

10  assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious

11  that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

12  Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not

13  enough for Petitioner to "show that the errors had some conceivable effect on the outcome

14  of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner]

15  of a fair trial, a trial whose result is reliable." *Id.* at 687.

16  Where a state court previously adjudicated the ineffective-assistance-of-counsel

17  claim under *Strickland*, establishing the court's decision was unreasonable is especially

18  difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that

19  *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem,

20  review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995

21  (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state

22  court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential

23  standards apply; hence, the Supreme Court's description of the standard as doubly

24  deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not

25  whether counsel's actions were reasonable. The question is whether there is any

26  reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*,

27  562 U.S. at 105.

28  ///

8

### i.   Ground 5

In Ground 5, Petitioner alleges that his counsel rendered ineffective assistance for failing to object to the charging document. (ECF No. 4 at 11.) He alleges that the information contained language, specifically "allowed and/or asked and/or watched and/or helped," which Petitioner alleges did not require a showing of a willful act or intent. (*Id.*) He further alleges that the information contained the disjunctive "or," which permitted a finding of guilt on multiple counts based on a single act. (*Id.*) In addition, he alleges that the information failed to state the locations of where the acts occurred, which prevented the preparation of an adequate defense. (*Id.*)

The Nevada Court of Appeals held:

> Bowles claimed counsel was ineffective for failing to challenge language in the information. Bowles failed to demonstrate he was prejudiced. Even assuming the language in the information regarding "allow" was incorrect, Bowles failed to demonstrate a reasonable probability of a different outcome had counsel objected to the language. Had counsel objected to the language, the State likely would have been permitted to amend the language in the information. *See* NRS 173.095(1); *Viray v. State*, 121 Nev. 159, 163-163, 111 P.3d 1079, 1081-82 (2005). Further, even without the "allowed" language, the information sufficiently alleged the crime of lewdness. Therefore, the district court did not err by denying this claim without holding an evidentiary hearing.
>
> Bowles claimed counsel was ineffective for failing to challenge the information because the information charged more than one crime in each count. Further, Bowles argues the information was insufficient because it did not allege in what room of the home the conduct took place. Bowles failed to demonstrate counsel was deficient or resulting prejudice. The information did not charge more than one crime per count, but instead, offered alternative theories for each count charged, *see* NRS 173.075(2), and the jury is not required to be unanimous in its determination of what theory constituted the crime, *see Richardson v. United States*, 526 U.S. 813, 817 (1999); *see also Anderson v. State*, 121 Nev. 511, 515, 118 P.3d 184, 186 (2005).
>
> Further, even assuming the State should have included information regarding which rooms in the house the conduct occurred, Bowles was on notice from the preliminary hearing as to what rooms the conduct occurred. "An accurate information does not prejudice a defendant's substantial rights if the defendant had notice of the State's theory of prosecution." *Viray*, 121 Nev. at 1082, 111 P.3d at 162-63. In addition, had counsel objected, the State likely would have been allowed to amend the information to include location information. *See* NRS 173.095(1). Therefore, Bowles failed to demonstrate a reasonable probability of a different outcome had counsel objected. Accordingly, the district court did not err by denying this claim without holding an evidentiary hearing.

1   (ECF No. 18-28 at 3-4.)

2       The Nevada Court of Appeals' determination that Petitioner failed to demonstrate

3   prejudice as a result of his counsel's failure to object to the "allowed and/or asked and/or

4   watched and/or helped" language in the information was not an unreasonable application

5   of *Strickland*. As noted by the Court of Appeals, an objection to the language in the

6   charging document would not have resulted in a different outcome of the proceeding

7   because the state district court would have likely permitted an amendment to the

8   information. Further, the Court of Appeals rejected Petitioner's argument that the term

9   "allowed" did not require a willful act because even without the alleged objectionable term,

10  the State sufficiently alleged the crime of lewdness. Therefore, the Court of Appeals

11  reasonably determined that Petitioner failed to demonstrate a reasonable probability that

12  but for counsel's failure to object to the language of the charging document, the outcome

13  of the proceedings would have been different.

14      Further, the Court of Appeals reasonably determined that Petitioner failed to

15  demonstrate that his counsel was deficient for failing to object to the use of the disjunctive

16  "or" in the information. Petitioner did not demonstrate that there was a basis for objectively

17  reasonable counsel to successfully object to the use of the disjunctive "or" in the charging

18  document. The Court of Appeals noted that the State is permitted to offer alternative

19  theories for each count in the charging document and the charging document did not

20  charge more than one crime per count. Counsel's decision not to object to the use of the

21  disjunctive "or" does not fall "outside the wide range of professionally competent

22  assistance." *Strickland*, 466 U.S. at 690. Because Petitioner has not sufficiently

23  demonstrated that his counsel's representation fell below an objective standard of

24  reasonableness, the Court need not address the prejudice prong of *Strickland* as to this

25  issue. *Id.* at 697.

26      Moreover, the Court of Appeals reasonably determined that Petitioner failed to

27  demonstrate a reasonable probability that but for counsel's failure to object that the

28  charging document did not specify where the acts occurred, the outcome of the

10

1   proceeding would have been different. Even if counsel had objected, the state district

2   court would have likely permitted an amendment to the information. And Petitioner

3   nonetheless received notice because S.T. and M.T. testified at the preliminary hearing as

4   to where the acts took place. Therefore, the Nevada Court of Appeals' rejection of

5   Petitioner's ineffective assistance claim was neither contrary to nor an objectively

6   unreasonable application of *Strickland.* Petitioner is denied federal habeas relief for

7   Ground 5.

8                               **ii.      Ground 6**

9           Petitioner alleges that his counsel rendered ineffective assistance for failing to file

10  a motion to suppress his statements to law enforcement. (ECF No. 4 at 13.) He asserts

11  that he was not given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966),

12  when he was subject to a custodial interrogation. *(Id.*) The Nevada Court of Appeals held:

13          Bowles claimed counsel was ineffective for failing to file a motion to
            suppress his interview with police officers. Bowles claimed he was in
14          custody and interrogated without being given his *Miranda* warnings. The
            district court concluded counsel was not deficient because Bowles failed to
15          demonstrate the motion would have been successful. Specifically, the
            district court found, based on evidence presented at trial, Bowles failed to
16          demonstrate he was in custody. The district court found the police asked
            Bowles to drive to the station for an interview and Bowles stated he would
17          after putting some things away. He took his time and then followed officers
            to the police station in his own vehicle. Once in the room, Bowles was
18          informed he was not under arrest and told the officers "I figured that one."
            Bowles was not handcuffed or restrained in any way. The door of the
19          interview room was unlocked, the door was not blocked, and he at one point
            announced he needed to use the bathroom and left the room. Further, he
20          was not arrested that day. Based on the totality of these circumstances, the
            district court concluded Bowles was not in custody at the time of the
21          interview, and therefore, any motion to suppress the interview would have
            been futile.

22
            The district court's decision is supported by substantial evidence,
23          *see State v. Taylor*, 114 Nev. 1071, 1082, 968 P.2d 315, 323 (1998);
            *Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978), and we
24          conclude the district court did not err by denying this claim without holding
            an evidentiary hearing.

25

26  (ECF No. 18-28 at 4-5.) The Nevada Court of Appeals' rejection of Petitioner's ineffective

27  assistance claim was neither contrary to nor an objectively unreasonable application of

28  clearly established law as determined by the United States Supreme Court.

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444. Custodial interrogation "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

"[T]he ultimate inquiry" of whether someone is in custody "is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted). There are "[t]wo discrete inquiries" to determine whether an individual is in custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Relevant factors in ascertaining how an individual would assess his freedom of movement "include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citations omitted). The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994).

In *Oregon v. Mathiason*, the Court held that questioning was not custodial wherein the suspect had gone voluntarily to the police station, the suspect was informed that he was not under arrest, and the suspect was allowed to leave at the end of the interview. 429 U.S. 492, 495 (1977). There was "no indication that the questioning took place in a context that where [the suspect's] freedom to depart was restricted in any way." *Id.* In *Yarborough v. Alvarado*, the Court denied a petitioner habeas relief based on a non-Mirandized police interview. 541 U.S. 652 (2004). The Court found that the following facts

12

1   weighed against a finding that petitioner was in custody: petitioner was not transported to
2   the interview at the police station by police; his parents remained in the lobby; he was not
3   threatened that he would be placed under arrest; and at the end of the interview, the
4   petitioner went home. *Id.* at 664. On the other hand, the Court noted that the petitioner
5   was brough to the station by his legal guardians rather than arriving on his own accord
6   and the interview lasted for two hours, which weighed in favor of the view that the
7   petitioner was in custody. *Id.* The Court held that the state court considered the proper,
8   objective factors and reached a reasonable conclusion that the petitioner was not in
9   custody for *Miranda* purposes. *Id.* at 665, 668. "[A] federal habeas court may not issue
10   the writ simply because that court concludes in its independent judgment that the state-
11   court decision applied [the law] incorrectly." *Id.* at 665.

12          The Nevada Court of Appeals reasonably determined that Petitioner failed to
13   demonstrate that his counsel was deficient for failing to file a motion to suppress his
14   statements to law enforcement. The Court of Appeals upheld the state district court's
15   determination that Petitioner's interview was not custodial finding that Petitioner
16   voluntarily appeared for the interview, Petitioner drove himself to the interview, Petitioner
17   was not under arrest, Petitioner was informed that he was not under arrest, Petitioner was
18   not restrained, and the door of the interview room was unlocked. (ECF Nos. 29 at 207-
19   209, 14-7 at 16.) As the Court of Appeals reasonably determined that a motion to
20   suppress would have been futile, counsel's conduct does not fall "outside the wide range
21   of professionally competent assistance." *Strickland*, 466 U.S. at 690. Because Petitioner
22   has not sufficiently demonstrated that his counsel's representation fell below an objective
23   standard of reasonableness, Petitioner is denied habeas relief on Ground 6.

24                          **iii.      Ground 7(1)**

25          In Ground 7(1), Petitioner alleges that counsel who represented him at the
26   preliminary hearing rendered ineffective assistance because there was a conflict of
27   interest. (ECF No. 4 at 15.) Respondents argue that Petitioner's claim is conclusory and

28

1   that Petitioner failed to demonstrate that he was prejudiced by any alleged conflict. (ECF

2   No. 30 at 14-15.) The Nevada Court of Appeals held:

3           Bowles claims the district court erred by denying his claim his preliminary
            hearing counsel had a conflict of interest because the public defender's
4           office previously, or at the time of the preliminary hearing, represented the
            victims' father. "In order to establish a violation of the Sixth Amendment, a
5           defendant who raised no objection at trial must demonstrate that an actual
            conflict of interest adversely affected his lawyer's performance." *Cuyler v.*
6           *Sullivan*, 446 U.S. 335, 348 (1980). "[A] defendant who shows that conflict
            of interest actually affected the adequacy of his representation need not
7           demonstrate prejudice in order to obtain relief." *Id.* at 349-50.

8           Bowles failed to demonstrate he was prejudiced. At the preliminary
            hearing, the State only had to prove slight or marginal evidence to support
9           the charges in the criminal complaint. *See Sheriff, Washoe Cty. v. Hodes*,
            96 Nev. 184, 186, 606 P.2d 178, 180 (1980). Bowles did not demonstrate
10          that absent the alleged conflict the State would not have been able to meet
            this standard. Further, he failed to demonstrate the adequacy of his
11          preliminary hearing counsel's representation was influenced by the alleged
            conflict. We reject Bowles' assertion the alleged conflict amounted to the
12          deprivation of counsel. Finally, we note after the preliminary hearing, new
            counsel was appointed to represent Bowles at trial who did not have a
13          conflict of interest. Accordingly, we conclude the district court did not err by
            denying this claim without holding an evidentiary hearing.
14

15  (ECF No. 18-28 at 5-6.)

16          The Nevada Court of Appeals' determination that Petitioner failed to demonstrate

17  prejudice was not an unreasonable application of *Strickland*. Petitioner failed to

18  demonstrate that the outcome of the preliminary hearing would have been different

19  absent the alleged conflict, particularly considering that the State only had to prove slight

20  or marginal evidence to support the charges at that stage of the case. As noted by the

21  Court of Appeals, preliminary hearing counsel withdrew and on October 3, 2011,

22  Petitioner was appointed new counsel who represented him at trial. Therefore, the Court

23  of Appeals reasonably determined that Petitioner failed to demonstrate a reasonable

24  probability that but for the conflict of preliminary hearing counsel, the outcome of the

25  proceeding would have been different. Petitioner is denied habeas relief on Ground 7(1).

26  ///

27  ///

28  ///

14

1    **V.    CERTIFICATE OF APPEALABILITY**

2         This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section

3    2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").

4    Therefore, the Court has *sua sponte* evaluated the claims within the Petition for suitability

5    for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851,

6    864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the

7    petitioner "has made a substantial showing of the denial of a constitutional right." With

8    respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable

9    jurists would find the district court's assessment of the constitutional claims debatable or

10   wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S.

11   880, 893 n.4 (1983)). Applying this standard, the Court finds a certificate of appealability

12   is unwarranted.

13   **VI.   CONCLUSION**

14        It is therefore ordered that Petitioner's writ of *habeas corpus* (ECF No. 4) is denied.

15        It is further ordered that Petitioner is denied a certificate of appealability.

16        The Clerk of Court is directed to enter judgment accordingly and close this case

17        DATED THIS 9th Day of December 2020.

18

19

20                                              _____
                                                MIRANDA M. DU
21                                              CHIEF UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28